**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAWRENCE L. R.,[1]　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　CIVIL ACTION
v.　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　No. 17-2665-JWL
NANCY A. BERRYHILL,　　　　　　　　)
Acting Commissioner of Social Security,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.　　Background**

---

[1] The court makes its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff argues that the ALJ erred in evaluating his claim at steps two and three of the sequential evaluation process (Pl. Br. 4), that the ALJ's residual functional capacity (RFC) assessment "is Legally Deficient and not Supported by Substantial Evidence in the Record as a Whole" id. at 9 (bold omitted), and the ALJ's "Step Four Evaluation Constitutes Legal Error and is not Supported by Substantial Evidence." Id. at 21 (bold omitted).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process--determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of

age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the issues as presented in Plaintiff's Brief and finds no error.

## II.    Evaluation at Steps Two and Three

Plaintiff claims the ALJ "only considered plaintiff's[2] [sic] impairments singly" (Pl. Br. 4), and found Plaintiff's fibromyalgia did not meet the severity of a Listing by relying on the report of Dr. Pakseresht, who examined Plaintiff at the request of the state agency, while ignoring the evidence from Plaintiff's treating rheumatologist, Dr. Ruhlman.[3] Id. at 4-5. He argues that "[l]ike the state agency physicians, the ALJ ignored the effect of Plaintiff's Fibromyalgia and its' [sic] symptoms, on his ability to sustain activity," and that "[n]either the state agency physicians [n]or the ALJ addressed Plaintiff's Fibromyalgia symptoms and/or their effect on his ability to sustain competitive employment." Id. at 6. He argues that the ALJ "failed to consider Plaintiff's other severe

---

[2] Throughout his Briefs, Plaintiff uses the term "plaintiff" to name himself. Hereinafter, when the court quotes such an instance from Plaintiff's Briefs, it will substitute "Plaintiff" for "plaintiff" without further attribution.
[3] The ALJ addressed Dr. Ruhlman as Dr. "Rhulman." The letterhead of Dr. Ruhlman's report confirms that he is Dr. Ruhlman. (R. 1223).

4

impairments in combination with his Fibromyalgia at Step Three," "failed to evaluate Plaintiff's upper extremity impairments in accordance with Listing 1.02B," and did not "articulate how he evaluated Plaintiff's upper extremity impairments and/or symptoms." (Pl. Br. 7). He points out that "sedentary work activity requires bilateral manual dexterity for repetitive actions." Id. at 8 (citing Soc. Sec. Ruling (SSR) 83-10, SSR 83-14, and SSR 96-9p).

The Commissioner argues, generally, that the ALJ properly evaluated the evidence, including evidence regarding Plaintiff's fibromyalgia, and the record evidence supports his RFC assessment. (Comm'r Br. 5-8). She argues, "The Court should affirm the ALJ's finding that Plaintiff had the RFC to perform sedentary work, because that finding is supported by substantial evidence, including the relatively normal examination findings, Plaintiff's extremely limited treatment, evidence that Plaintiff's arm and hand symptoms improved after surgery, and the fact that no medical professional found Plaintiff more limited than the ALJ did." Id. at 5-6. Specifically, she argues that the ALJ considered Plaintiff's fibromyalgia symptoms in combination with his other impairments, and properly considered Plaintiff's allegations of limitations resulting from symptoms. Id. at 6. She argues that "neither Dr. Pakseresht nor Dr. Ruhlman rendered an opinion about Plaintiff's functional limitations," and the ALJ gave no "greater credence to either physician's findings." Id. at 7. She argues that the ALJ did not ignore record evidence despite Plaintiff's suggestion to that effect. Id.

In his Reply Brief, Plaintiff focuses on the Commissioner's general argument quoted above and explains how in his view the evidence does not demonstrate "relatively

normal examination findings" (Reply 1-9); does not support finding "extremely limited treatment," id. at 9-10; demonstrates that Plaintiff reported hand, wrist, and arm symptoms both before and after carpal tunnel release surgery, negating "improvement in his hand and arm symptoms after surgery" (Reply 10-12); and demonstrates greater limitations than assessed by the ALJ despite that "no medical professional found a more restrictive RFC" than the ALJ did. Id. at 12-16.

### A. The ALJ's Step Two and Three Findings

At step two, the ALJ found that Plaintiff has the following impairments which are "severe" within the meaning of the regulations: ischemic heart disease status post coronary artery bypass grafting, fibromyalgia, and status post bilateral carpal tunnel releases. (R. 17). He found in his step three analysis that Plaintiff's impairments, individually or in combination do not meet or medically equal the severity of a listed impairment. Id. at 18. He specifically noted that he had considered Listing 4.04C (coronary artery disease), Listings in sections 1.00 (musculoskeletal system) and 14.00 (immune system disorders), the neurological listings (§ 11.00 listings), and had considered fibromyalgia pursuant to SSR 12-2p. He found in relation to carpal tunnel syndrome that Plaintiff's "functioning in terms of activities of daily living and use of his arms and wrists was not severe enough to [sic] individually or in combination, to meet or equal a listing." Id. Regarding fibromyalgia, he noted the issue of medical equivalence had not been specifically addressed by any medical source, but that "the evidence of record fails to indicate that the claimant has symptomatic limitations so severe that his

fibromyalgia would have medically equaled any listing prior to her [sic] date last insured." Id.

**B.     Analysis**

Plaintiff's argument that the ALJ only considered Plaintiff's impairments singly is without merit. The ALJ stated several times that he had considered all the evidence or the entire record. (R. 15, 17, 18). He specifically stated that Plaintiff's impairments "considered singly and in combination" do not meet or medically equal the severity of a listed impairment, and that he assessed RFC "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of all the claimant's medically determinable impairments." Id. at 18. Plaintiff has not demonstrated otherwise, his contrary assertion notwithstanding. The court's general practice is to take a lower tribunal at its word when it declares that it has considered a matter. Hackett, 395 F.3d at 1172-73 (citing United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison time for probation violation, but court need only say that it has done so); and Andrews v. Deland, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a de novo review of the record")). Plaintiff has shown no reason to discredit the ALJ's assertion.

Plaintiff's argument that the ALJ relied on the report of Dr. Pakseresht while ignoring the evidence from Dr. Ruhlman is likewise without merit. The ALJ discussed both doctor's reports, noting that Dr. Ruhlman confirmed the diagnosis of fibromyalgia "with 18 of 18 positive tender points," and recorded Plaintiff's complaints "of fatigue,

7

joint pain, and low back pain," prescribed Gabapentin for pain, but did not address fatigue except to mention that "improvement of sleep was expected to reduce fatigue with possible future consideration of nortriptyline." (R. 20). He summarized Dr. Pakseresht's report also, and specifically noted that the report mentioned Plaintiff's complaints of a history of fibromyalgia, fatigue, pain, and sleep disorder. Id. at 21. He noted that Dr. Pakseresht assessed arthralgias and a history of fibromyalgia, and that although "he did not offer an opinion as to functional limitations or restrictions, his findings were consistent with the claimant's medical history and his reported activities of daily living." Id. As, the Commissioner pointed out, neither physician opined regarding functional limitations resulting from Plaintiff's fibromyalgia, and there is simply no indication that the ALJ preferred the report of one physician over the other. In fact, both reports include substantially the same information regarding Plaintiff's fibromyalgia. Compare (R. 793-96) with (R. 1223). Plaintiff cites to Dr. Ruhlman's handwritten (and mostly illegible) treatment notes (R. 837-43) and argues, "Other than the first visit, the ALJ did not consider Dr. Ruhlman's other records in evaluating plaintiff's claim." (Pl. Br. 5). There are several problems with this argument. First, and foremost is that Plaintiff has not shown, and the court cannot decipher, any information contained in the treatment notes that would make the ALJ's summary erroneous. Dr. Ruhlman's first visit was August 31, 2015, it has the longest treatment note, at one page, and is very difficult to make out. (R. 840). However, Dr. Ruhlman provided a typewritten report of that visit to Dr. Narla, Plaintiff's primary care provider, and that is the report upon which the ALJ relied. (R. 20) (citing Ex. 11F (R. 1223)). Moreover, each of the other treatment notes contain a

8

handwritten paragraph captioned "Subjective:" in which Dr. Ruhlman recorded Plaintiff's reports and complaints, upon which Plaintiff relies to suggest that "Dr. Ruhlman documented"[4] certain of Plaintiff's complaints (Pl. Br. 5), but which, as Plaintiff's reports to the physician, are not properly considered the physician's opinions. (841-43). In the "Assessment" section of each treatment note, as best the court can decipher, Dr. Ruhlman noted "FMS" (fibromyalgia syndrome) (R. 841-43), "sleep disorder" (R. 841, 843), "back pain" (R. 841-43), and "CP" (chronic pain?). (R. 842). Each of these was recognized and summarized by the ALJ, but as diagnoses they do not express functional limitations.

Plaintiff's argument that the ALJ failed to address his fibromyalgia symptoms and their effect on his ability to sustain competitive employment must also fail. Once again, the ALJ stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. 18). He summarized the standard applicable to evaluating Plaintiff's alleged symptoms, id. at 18-19, and concluded:

> the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

---

[4] The court notes that each treatment note also includes a section for recording positive tender points, revealing 18 positive tender points on October 27, 2015 and August 22, 2016 (R. 841, 843) and 12 positive tender points on March 14, 2016. (R. 842).

9

(R. 19). Plaintiff has not provided a basis to discredit the ALJ's assertion he considered the symptoms other than to merely argue that he did not. Moreover, Plaintiff's claim that the ALJ did not consider Plaintiff's upper extremity impairments pursuant to Listing 4.00D.2.b.(i), or Listing 1.02B is merely a bald assertion that the ALJ failed to consider whether Plaintiff's condition meets or medically equals a listed impairment despite the ALJ's assertion that he did. And, Plaintiff points to no record evidence suggesting that his condition meets or equals any Listing. Were the court to find the ALJ did not consider any particular Listing, that error would be harmless absent a showing of prejudice, which Plaintiff has not made.

Having found no basis in the decision, or support in the record, for Plaintiff's allegations of error, rather a multiplicity of bare citations to record evidence in Plaintiff's briefs, the court concludes that Plaintiff is really asking the court to reweigh the evidence and reach a conclusion at odds with that of the ALJ. As noted above, the court is without authority to do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434.

## III. The RFC Assessment

In his argument of error in the ALJ's RFC assessment, Plaintiff once again cites to no record evidence of specific functional limitations greater than those assessed, but argues that the ALJ should have found greater limitations from that record evidence. (Pl. Br. 11-19). Plaintiff extensively cites to treatment notes related to his open-heart surgery, hernia surgery, severe native 3-vessel coronary artery disease and related hospitalization, carpal tunnel surgeries, gallbladder surgery, and the various symptoms reported to

10

physicians in his treatment records. (Pl. Br. 11-19). However, the ALJ's summary of Plaintiff's treatment records is a fair summary, and Plaintiff has shown no error in that summary. Plaintiff asserts that the ALJ's evaluation of his allegations of symptoms was erroneous because "[t]he 'longitudinal medical record' in this case fully supports [that] Plaintiff's severe and persistent impairments and symptoms, render him unable to sustain competitive employment since, at least, October 2013." Id. at 11.

However, Plaintiff's argument rests on his allegations of symptoms, which the ALJ found inconsistent with the "medical evidence and other evidence in the record," and Plaintiff has not demonstrated error in that finding. His mere citation to his allegations of symptoms in the medical records is nothing more than a request that the court weigh the evidence and substitute it evaluation for that of the ALJ. He must demonstrate that the evidence <u>will not support</u> the ALJ's finding, not merely suggest that the evidence will support a different finding. The fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff does allege specific error in the ALJ's evaluation of fibromyalgia:

> the ALJ improperly failed to address the effect of Plaintiff's Fibromyalgia symptoms on his ability to perform and/or sustain the performance of sedentary skilled work activity. The ALJ's determination Plaintiff's Fibromyalgia remained in remission is contrary to the evidence of record, which fully documents, consistent and persistent Fibromyalgia symptoms. Contrary to the ALJ's determination the record herein documents very active Fibromyalgia symptoms throughout the period in issue, despite Plaintiff's healthy eating and attempts to exercise.

(Pl. Br. 20). However, Plaintiff misunderstands the decision. The ALJ specifically addressed the effect of Plaintiff's fibromyalgia on his ability to perform and sustain sedentary skilled work activity. (R. 22) ("He has a long-standing diagnosis of fibromyalgia going back about 30 years, which did not affect his ability to work, and there were no indications that the condition became worse over time."); See also (R. 20-22). He did not find Plaintiff's fibromyalgia remained in remission--or ever was in remission. He recognized a long-standing diagnosis of fibromyalgia, discussed Plaintiff's allegations of symptoms related thereto, and discussed the reports and records of Dr. Ruhlman, Dr. Pakseresht, and the state agency physician, Dr. Hughes, regarding fibromyalgia. Id. at 20-22. He found that because Plaintiff had worked at a sedentary level for thirty years with fibromyalgia and his fibromyalgia had not gotten worse, he continued to be able to work at his past relevant work at the sedentary level despite his fibromyalgia.

Plaintiff also argues that the ALJ relied on Plaintiff's "walking and gardening to show he can work eight hours a day, five days a week," id. and "failed to explain how plaintiff's gardening equates to an ability to be competitively employed." Again, Plaintiff misunderstands the decision. The ALJ did not find that Plaintiff's abilities to

walk and garden show that he can work eight hours a day, seven days a week. Rather, he summarized his RFC assessment, noting the medical records suggesting that Plaintiff's medical problems had been addressed and favorably resolved, and noting additional record evidence indicating "at various time[s] that he can garden for a couple of hours, that he walks a lot, etc. and <u>thus do not support</u> [Plaintiff's] contention that <u>he is limited</u> to less than sedentary work." (R. 22) (emphases added). This is a finding that Plaintiff's allegations are inconsistent with his abilities, not a finding that Plaintiff can work because he sometimes gardens and walks a lot.

## IV.     Step Four

Finally, Plaintiff argues error at step four because the ALJ failed to make any specific findings at phase two of step four as required by the Tenth Circuit in <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996) and by SSR 82–62, 1975–1982 West's Soc. Sec. Reporting Serv., Rulings 809, 813 (1983).

As Plaintiff suggests, at step four of the sequential evaluation process, an ALJ is required to make specific findings in three phases. <u>Winfrey</u>, 92 F.3d at 1023 (citing SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical [and mental] limitations." <u>Winfrey</u>, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." <u>Winfrey</u>, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." <u>Id.</u>, 92 F.3d at 1023. These

13

findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain ... specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may properly rely upon vocational expert (VE) testimony in making his findings at phase two and phase three of step four. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may not delegate the step-four analysis to the VE. He may, however, rely on information supplied by the VE regarding the demands of plaintiff's past relevant work and whether a person with plaintiff's RFC could meet those demands, and he may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE. Id. 331 F.3d at 761.

Again, Plaintiff misunderstands the decision at issue. Here, the ALJ found that Plaintiff is able "to perform the full range of sedentary work." (R. 18) (finding no. 6) (capitols omitted, emphasis added). Plaintiff argues, "there is simply no on-the-record finding regarding the demands of Plaintiff's past relevant work. In so far as is revealed by the decision, the ALJ merely delegated the phase two and phase three findings to the vocational expert, and that is the specific error requiring remand in Winfrey, 92 F.3d at 1025." (Pl. Br. 22) (quoting Luna v. Colvin, No. 13-1289-JWL, 2014 WL 5598248, at *4 (D. Kan. Nov. 4, 2014)). However, the ALJ found that Plaintiff's past relevant work as a customer service representative was physically sedentary, and mentally required a specific vocational preparation level of 5. (R. 22). These are sufficient findings in the

circumstances of this case. To be sure, the vocational expert (VE) testified that Plaintiff's past relevant work as a customer service representative was "sedentary, and it is skilled with an SVP of 5." (R. 58). But, the ALJ is entitled to rely on the VE testimony, and he did so here, specifically finding that the work was "sedentary, SVP 5." (R. 22) (bold omitted). Plaintiff does not argue that the work was not sedentary or was more skilled than an SVP of 5. Since the ALJ made the further finding that Plaintiff can do the <u>full range</u> of sedentary work, Plaintiff is able to perform sedentary work at the SVP 5 level, and the ALJ was correct to conclude at phase three of step four that Plaintiff "is able to perform his past work as a customer service representative as it as [sic] actually and generally performed." (R. 22). The ALJ did not delegate the phase two and phase three findings to the VE. Rather, he relied on the VE's phase two testimony and made his own phase three finding that Plaintiff can meet the demands of his past relevant work.

Plaintiff argues, "It is also significant to note the DOT code identified by the VE is not consistent with either Plaintiff's former collection work for GE or his UWA, as a customer service representative. See DOT Code 239.362-014. (Tr. 22)." Because Plaintiff did not further develop this argument, he has waived it. <u>Wall v. Astrue</u>, 561 F.3d 1048, 1066 (10th Cir. 2009) (issue presented without developed argumentation is waived); <u>Franklin Sav. Corp. v. U.S.</u>, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing <u>Sports Racing Servs., Inc. v. Sports Car Club of America, Inc.</u> 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).

15

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated January 3, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum
United States District Judge**